### EASTERN TEXAS ELECTRIC CO. v. RHYMES et al. (No. 1560.)

Court of Civil Appeals of Texas. Beaumont. Dec. 23, 1927.

Rehearing Denied Jan. 11, 1928.

**1. Trial ⊙⊃351(5)—Refusing to submit special issue whether plaintiff had right to go on pole, where injured, of defendant furnishing electricity to plaintiff's employer only in emergency, and accompanying charge defining emergency, held reversible error not cured by issues submitted.**

In action for personal injuries from electric current sustained by plaintiff while performing duties for employer on pole on premises of defendant furnishing electric current to plaintiff's employer, refusal to submit special issue whether plaintiff had right to go on defendant's pole and operate switch only in case of emergency, and accompanying charge defining emergency, *held* reversible error, where defendant pleaded emergency as affirmative defense, and supported plea by competent evidence, and prepared separate and distinct issue calling for finding thereon with charge defining emergency as pleaded, and error was not cured by special issue submitted.

**2. Trial ⊙⊃352(5)—Submitting special issue, carrying to jury two distinct issues, held error.**

In action for personal injuries from electric current sustained by plaintiff while performing duties for employer on pole on premises of defendant furnishing electric current to plaintiff's employer, submitted special issue carrying to jury two distinct issues, first, plaintiff's right to be on pole generally, which was second submission of his right to recover at all, and, second, which was an attempt to submit defense of plaintiff's having right to go on pole only in emergency, *held* error, since trial court must submit each issue distinctly and separately.

**3. Trial ⊙⊃219—Court must give explanation and definition of legal terms necessary to enable jury to answer each issue.**

Court must give such explanation and definition of legal terms as shall be necessary to enable jury to answer each issue.

**4. Trial ⊙⊃215—Refusing charge that plaintiff, injured while performing duties for employer on pole of defendant furnishing electricity to employer, had burden of proving his right to go on pole "generally," held error.**

In action for personal injuries from electric current sustained by plaintiff while performing duties for employer on pole on premises of defendant furnishing electric current to plaintiff's employer, refusal to charge that burden was on plaintiff to prove that he had right to go on pole "generally," and not only in emergencies, *held* error, where such right was submitted to jury as basis for plaintiff's recovery.

**5. Appeal and error ⊙⊃1060(4)—Plaintiff's counsel's suggestion in argument that defendant secured submission of its issues to confuse jury held reversible error.**

Plaintiff's counsel's suggestion in argument to jury that "it occurred to him that it was purpose of defendant's attorneys in requesting all of said special issues presented by him to confuse jury in returning its verdict," *held* reversible error, where jury returned into court general verdict addressed to trial judge, which he did not ask for, advising him of legal effect to give their answers, since suggestion was calculated to prejudice jury against defendant's defenses, and to create prejudice against it in minds of jury.

**6. Appeal and error ⊙⊃842(1)—Error in argument of counsel is question of law.**

Error in argument of counsel is question of law, and not of fact.

**7. Appeal and error ⊙⊃1060(1)—Unless it reasonably appears harm did not result, erroneous argument must reverse case.**

Unless it reasonably appears that harm did not result from counsel's erroneous argument, such erroneous argument must reverse case.

**8. Trial ⊙⊃114, 133(1)—Anything calculated to prejudice jurors' minds should be carefully avoided by counsel in arguments, and effectually shut out by court's rulings.**

Anything that is calculated to prejudice minds of jurors in making their findings or ren-

dering their verdicts must be carefully avoided by counsel in arguments, and most effectually shut out by rulings of court.

**9. Trial ⬤➡194(20)—In action for personal injuries, issue of value of medical services was for jury, and hence peremptory instruction to find value was error.**

In action for personal injuries, court erroneously instructed jury to find peremptorily on value of doctor's bill, medical attention, etc., where amount of bill rested on testimony of doctor who rendered services and who admitted that he reduced his bill more than $200, since issue called for expert testimony as to services rendered, and reasonableness of charge therefor and conclusions to be drawn from such testimony were for jury.

**10. Pleading ⬤➡36(3) — Defendant, having made contract in full part of its pleading, was bound by its terms.**

Defendant, having pleaded contract in hæc verba, and made it in full part of its pleadings, was bound by all its terms.

**11. Pleading ⬤➡216(2)—Terms of contract, made part of pleading, must be construed in passing on general demurrer thereto.**

Defendant, having pleaded contract in hæc verba, and made it in full part of its pleading, terms, and conditions of contract, must be construed in passing on general demurrer to pleading.

**12. Electricity ⬤➡14(1)—Company furnishing electricity under agreement to save consumer harmless against damages to persons growing out of its negligence must keep appliances in safe condition.**

Company, contracting to furnish electric current under contract expressly providing that it should save consumer harmless against damages to persons growing out of its negligence, was under contract to keep its appliances in safe condition.

**13. Indemnity ⬤➡13(1)—Power company, liable for injuries to consumer's employee, 'held' not entitled to recover over against consumer because of consumer's breach of agreement to install switch and refusal to permit company to turn off current while making repairs.**

Where employee of consumer of electric current was injured by burns from electric current while performing duties for consumer on pole on defendant's premises on which switch was out of repair, and defendant, furnishing electricity, had installed jumper to carry current around switch, and defendant was under contract to keep its appliances in safe condition, and was guilty of negligence, consumer, which had breached contract to install switch on its premises, and which refused defendant permission to cut off current while repairing switch, was not liable to defendant for reimbursement.

**14. Trial ⬤➡155—General demurrer, carried with case, and ruled on after all evidence was in, should be construed as instructed verdict.**

Where general demurrer was carried with case, and not ruled on until all evidence was in, it should be construed as an instructed verdict.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Action by W. J. Rhymes against the Eastern Texas Electric Company, in which defendant impleaded the Texas Company, and filed cross-bill against the latter. The Texas Company's demurrer to the cross-bill was sustained, and judgment was rendered for plaintiff against defendant, and defendant appeals. Judgment for plaintiff reversed and remanded. Judgment for the Texas Company on demurrer affirmed.

Orgain & Carroll, of Beaumont, for appellant.

Morris, Sewell & Morris, of Houston, and Gordon, Lawhon, Davidson & Sharfstein, of Beaumont, for appellees.

O'QUINN, J. Appellee W. J. Rhymes brought this suit against appellant to recover damages for personal injuries, alleging that, while in the due performance of duties owed by him to his master, the Texas Company, he was burned by an electric current passing over the wires of appellant. On his allegations, he was preparing to repair some insulators on a pole installed by appellant to carry its electric wires, and, while in discharge of this duty, was injured through appellant's negligence. On the facts, at the time Rhymes was injured, appellant was furnishing appellee the Texas Company electric current under a written contract fixing the cost, terms, and conditions of such service. As an instrument to effectuate the purposes of this contract, appellant erected a tall pole on its premises near to the Texas Company's premises to carry its electric lines onto the premises of the Texas Company. The wires were strung on this pole, and to regulate the current appellant installed a switch also on this pole. This switch was out of repair, and, that the flow of current might not be interrupted, appellant installed a "jumper" to carry the current around the switch into the plant of the Texas Company. In the discharge of his duties to his master, the Texas Company, Rhymes went upon the pole while the switch was out of repair and the jumper was installed, to throw the switch and to do some necessary repair work. These facts were sufficiently alleged, and further that he did not know the defective condition of the switch and of the installation of the jumper.

Appellant answered by general and special demurrers, general denial, plea of contributory negligence, and by special pleas charging appellee with being a trespasser, and by specially pleading:

"And this defendant says that if there was any right on the part of the Texas Company's employés to go upon said pole, that the same would have existed only in the instance of an emergency such as the operation of said switch

to save' the' life of an employé of the Texas Company, or to save property from fire where the working of said switch could have accomplished either, or both, and that the said Rhymes, if he went upon said pole, was not there in the case of an emergency, and was a trespasser, and without right upon same."

. Appellant also answered by a special plea impleading the Texas Company, alleging the contract under which electric current was being furnished and a breach of this contract by the Texas Company, and the Rhymes' injuries were the proximate result of such breach. On these allegations appellant prayed for judgment over against the Texas Company for any sum it might be compelled to pay. The Texas Company answered this plea by general and special demurrers, general denial, etc. The demurrers were carried by the court through the trial to the conclusion of the evidence, and then sustained. The issues between appellant and Rhymes were submitted to the jury upon special issues, except as to the amount of the doctor's bill, etc., and as to these items the jury were peremptorily instructed to find the amount actually paid by Rhymes. On answer of the jury to the other issues, judgment was entered in favor of Rhymes for $25,000 damages, and the additional sum of $729.38, under the court's peremptory charge. In addition to answering the special issues, the jury returned into court the following general verdict, which was in no sense responsive to the court's charge:

"October 14, 1926.
"To the Honorable Judge of 58th District Court· of Jefferson County, Tex.:
· "We, the jury, find that the plaintiff, W. J. Rhymes, is entitled to judgment against the Eastern Texas Electric Company for the sum of $25,729.38, twenty-five thousand, seven hundred, twenty-nine dollars and thirty-eight cts.
"C. B. Whittington, Foreman.
"General Verdict. No. 25214. W. J. Rhymes v. Eastern Texas Electric Company, Filed October 14th, 1926. E. Kirby Smith, Clerk District Court of Jefferson Co., Tex., by Geo. H. Stovall, Deputy."

As an essential element of Rhymes' cause of action, the court submitted issue No. 1 as follows:

"Special issue No. 1: Did plaintiff Rhymes, as an employee of the Texas Company, on the occasion in question, have a right to open the switch at the pole on which switch No. 10 was located, just outside the Texas Company's property at Port Neches? Answer 'Yes' or 'No,' as you find the facts to be."
To this question the jury answered: "Yes."

[1] On the issue made by its special plea that Rhymes had no right on its pole, except in case of an "emergency," appellant requested the submission of the following special issue:

"Special requested issue No. 34: Did the plaintiff Rhymes have the right to go upon the pole of defendant, Eastern Texas Electric Company, and to operate said switch only in case of an emergency?"

In connection with said requested issue, appellant offered the following special charge defining the term "emergency":

"Defendant's special charge No. 109: Gentlemen of the jury: You are instructed that it is the contention of the defendant company that the only time an employee of the Texas Company would have a right to work switch No. 10 would be in the case of an emergency such as the saving of a life of one about to be killed by the high-tension lines, or to save property about to be set on fire by said high-tension lines, and, in answering defendant's special issue No. 34, you will refer to, and be guided by, this instruction as to what is meant by the term 'emergency' as therein used."

This issue and special charge were refused by the court, and in lieu thereof Rhymes requested, and the court submitted, the following issue:

"Plaintiff's special requested issue No. 1: Gentlemen of the jury: At the request of the plaintiff, you are asked the following question: Did the plaintiff Rhymes, as an employee of the Texas Company, have the right to go upon the pole and operate switch No. 10 generally for the purpose of cutting off the current at the Texas Company plant, or did he have such right, if any, only in case of an emergency? You will answer by using the word 'generally,' or the words 'only in case of emergency,' as you find the fact to be."

Though excepted to on that ground, the court refused to instruct the jury on the burden of proof under this issue and to define the term "emergency," though requested so to do.

The jury answered the issue: "Generally."

The trial court erred in refusing appellant's special issue No. 34 and the accompanying charge defining "emergency." The issue that Rhymes had the right to go upon the pole "only in the case of an emergency," and whether' an emergency existed, was raised by the evidence. It is not necessary to review the evidence on that issue, since by requesting its submission appellee conceded that it was in the case. Having pleaded "emergency" as an affirmative defense, and having supported its plea by competent evidence, and having prepared a separate and distinct' issue calling for a finding thereon, with a charge defining "emergency" as pleaded, and having duly requested its submission, appellant was entitled to a jury finding thereon, and the court committed reversible error in its refusal. In Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, the Supreme Court said:

"The statutes make it the duty of the court in trials by jury: First, to submit all the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and third,

to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue."

This issue was raised by the pleadings; it was controverted; and appellant's requested issue submitted it clearly, distinctly, and separately. In Railway Co. v. Wilson, 279 S. W. 808, it was said by the Commission of Appeals:

"We think this special requested charge presents clearly, distinctly, and separately, the issue tendered by plaintiff in error in its pleadings, and should have been given."

See, also, Robinson v. Ætna Life Insurance Co. (Tex. Com. App.) 276 S. W. 901; Graves v. Haynes (Tex. Com. App.) 231 S. W. 383; Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046.

The error in the refusal of this issue and charge was not cured by giving Rhymes' requested special issue, because:

[2] (a) Rhymes' issue carried to the jury two distinct issues, first, his right to be upon the pole "generally," which was a second submission of his right to recover at all; that is, it involved the same issue covered by No. 1 given supra; and, second, it was an attempt to submit the defense of "emergency." This was error. It was affirmatively held in the Fox Case, supra, that the trial court must submit "each issue distinctly and separately."

[3] (b) The court refused to define the term "emergency." Quoting again from the Fox Case, the trial court must "give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue." See Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; Connellee v. Nees (Tex. Com. App.) 266 S. W. 502; Traction Co. v. Jenkins (Tex. Civ. App.) 266 S. W. 175; Dallas Railway Co. v. Warlick (Tex. Com. App.) 285 S. W. 302; Telegraph Co. v. Coleman (Tex. Civ. App.) 284 S. W. 279.

[4] (c) The court erred in refusing to charge the jury that the burden was on Rhymes to prove that he had the right to go upon the pole "generally."

[5-7] The court's charge consisted of a number of special issues submitted without relation to a request from the attorneys. Two issues requested by Rhymes' attorneys and seventy-five requested by the defendant's attorneys, were given. In the course of his argument, while considering a special issue requested by appellant with respect as to whether or not a rope used by the plaintiff at the time of receiving the injury was in a damp condition, one of Rhymes' attorneys stated to the jury that, quoting from the bill of exception, "it occurred to him that it was the purpose of defendant's attorneys in requesting all of said special issues presented by him to confuse the jury in returning its verdict." This argument was promptly ex-cepted to, but the exception was overruled. This argument was reversible error. The suggestion that appellant's counsel had secured the submission of its issues "to confuse the jury in returning its verdict" was calculated to prejudice the jury against its defenses, and create a prejudice against it in the minds of the jury. These issues were a part of the court's charge, and, having been submitted, it was not the province of counsel to discuss the propriety of their submission. Error in the argument of counsel is a question of law and not of fact. Unless it reasonably appears that harm did not result, erroneous argument must reverse the case. The rule is thus stated by the Commission of Appeals in Bell v. Blackwell, 283 S. W. 765:

"So that, there being error in the proceedings through which plaintiffs in error lost their case, the cause should be remanded unless it affirmatively appears from the record that such error was harmless; or, differently stated, a reversal should follow if there is any reasonable doubt of its harmful effect."

See, also, Railway Co. v. Cooper, 70 Tex. 67, 8 S. W. 68; Dillingham v. Scales, 78 Tex. 205, 14 S. W. 566; Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Parker v. Miller (Tex. Com. App.) 268 S. W. 726; Davis v. Hill (Tex. Civ. App.) 272 S. W. 291; Bruyere v. Bank (Tex. Civ. App.) 262 S. W. 844, 848.

[8] In this case we think it affirmatively appears that prejudice did result from the argument. Counsel having told the jury that appellant asked its issues to confuse them, it returned into court a general verdict addressed to the trial judge, advising him of the legal effect to give their answers. The judge had asked for no such finding. It can be explained only on the ground that the jury was uncertain of the legal effect of their answers to appellant's requested issues, and wanted to render a verdict for plaintiff regardless of the facts found by them. The right to a trial by a fair and impartial jury is one of the highest and most valued rights of litigants, and anything that is calculated to prejudice the minds of jurors in making their findings or rendering their verdicts should be most carefully avoided by counsel in their arguments, and most effectually shut out by the rulings of the court. The argument for appellee was tantamount to accusing appellant's counsel of bad faith and insincerity in requesting the special charges, or, to say the least, was highly calculated to have that effect on the jury, and thus bias them against appellant's defenses.

[9] The court erroneously instructed the jury to find peremptorily on the value of the doctor's bill, medical attention, etc. The amount of this bill rested upon the testimony of the doctor who rendered the services, and who admitted that he reduced his bill more than $200. This issue called for expert tes-

timony as to the services rendered and the reasonableness of the charge therefor, and the conclusions to be drawn from such testimony were for the jury (American National Insurance Co. v. McKellar [Tex. Civ. App.] 295 S. W. 628), under a proper charge of the court (City of Beaumont v. Dougherty [Tex. Civ. App.] 298 S. W. 631).

On the errors discussed, it becomes unnecessary to discuss appellant's propositions that the verdict of the jury assessing Rhymes" damages at $25,729.38 is excessive, and that the answers to certain questions are against the weight and preponderance of the evidence.

[10-13] The general demurrer of the Texas Company against appellant's cross-bill was properly sustained. This plea, with the contract as an exhibit, is too long to give in full. It is sufficient to say that appellant pleaded certain covenants of the contract which required the Texas Company to install a switch on its premises to be used in the regulation of the electric current, and that this was not done; that appellant had the right to cut off the current to make necessary repairs to its appliances; that it asked permission to cut off the current to repair the defective switch, and the Texas Company denied it that right; that the Texas Company breached the contract in that respect; that such breach constituted negligence, which was the proximate cause of appellee Rhymes' injury. It does not appear from appellant's pleading how the failure to install the switch could have been a proximate cause of Rhymes' injuries. Had the switch been installed, as provided in the contract, it would have been on the Texas Company's premises. Rhymes was injured under conditions and at a place where the switch would have afforded him no protection. The refusal of permission to cut off the current at the time requested could not have been a proximate cause of Rhymes' injuries. The Texas Company made no promise to indemnify appellant for any loss resulting from the refusal to grant the request. The rights of the parties were fully stated in the contract. If appellant had the right to cut off the current, the right could not have been denied by the Texas Company. Having pleaded the contract in hæc verba, and made it in full a part of its pleading, appellant was bound by all its terms, and such terms and conditions must be construed in passing on the general demurrer. The contract expressly provides that appellant should save the Texas Company harmless against all damages to persons growing out of its negligence. If appellant was under contract to keep its appliances in a safe condition, and it was, and if it was guilty of negligence in the things charged against it by appellee as the basis of his suit, and the jury found that it was, then on the

facts under the contract the Texas Company was not liable to appellant.

[14] In this case the general demurrer, as we have said, was carried with the case and not ruled on until all the evidence was in. On such ruling it should be construed as an instructed verdict, and, when the rights of appellant against the Texas Company are measured by the facts in evidence, it clearly appears that it had no cause for reimbursement.

The judgment of Rhymes against appellant is reversed, and his case remanded for a new trial. The judgment in favor of the Texas Company on its general demurrer against appellant is affirmed.